In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00089-CR

                                                ______________________________

 

 

                                RYAN PATRICK JOHNSON,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the 102nd
Judicial District Court

                                                             Bowie County, Texas

                                                       Trial Court
No. 09F0319-102

 

                                                    
                                              

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            Derrick
Robinson and Ryan Patrick Johnson had been acquaintances and perhaps friends in
the past.  But, on December 17, 2008,
Johnson shot and killed Robinson. 
Johnson was convicted by a jury for Robinson’s murder and was sentenced
to imprisonment for a period of ninety-nine years and fined $10,000.00.  We affirm the trial court’s judgment.

I.          FACTUAL BACKGROUND

 

            Johnson testified on his own
behalf and gave the following account: 
Robinson called Johnson twice on the day Robinson was killed.  When told by Johnson to stop calling,
Robinson announced that he was outside Johnson’s house.  Johnson was alarmed because he did not give
Robinson his telephone number and had moved to a new home.  Johnson went outside and saw Robinson walking
into his yard.  When asked by Robinson
why Johnson had been ignoring him, Johnson replied that he did not want to
speak with Robinson and turned to go back in the house.[1]  At that point, Robinson grabbed Johnson’s
wrist; Johnson pulled his wrist free, asked Robinson to leave, and went back
inside.  Robinson refused to leave.  Alarmed at Robinson’s refusal to leave,
Johnson retrieved a gun from his mother’s room and placed it in his coat
pocket.  When Johnson emerged from his
home, Robinson was still outside and stated that he needed a few minutes to
speak with Johnson.  Johnson agreed, and
the two met in a wooded area down the street from Johnson’s house.  Robinson and Johnson conversed in the front
seat of Robinson’s vehicle; Robinson indicated he had feelings for Johnson, and
Johnson indicated that he wanted Robinson to leave him alone.  During the course of this conversation,
Johnson pulled the gun out of his jacket in order to frighten Robinson and in
order to emphasize the point that he wanted Robinson to leave him alone.  After that, both Johnson and Robinson exited
the vehicle, and Johnson began walking back to his car.  In the meantime, Robinson opened the back of
his vehicle and was “scrambling through some clothes or something in the back.”  Robinson then told Johnson that he was going
to kill Johnson and his family.  Johnson
was looking at Robinson out of the corner of his eye and saw Robinson’s arm
raised.  When Johnson turned around, he
saw Robinson’s arm go up and saw something in his hand, which he believed to be
a gun.[2]  Johnson panicked and accidentally fired at
Robinson, killing him.   Johnson fled,
only to be arrested for Robinson’s murder several months later.  

II.        ANALYSIS

 

            On appeal, Johnson
claims the jury in his case was not properly sworn, in violation of his right
to a trial by jury under the United States and Texas Constitutions.  Johnson further claims the punishment charge
presents fundamental error because it permitted the jury to reject a finding of
sudden passion, in the absence of unanimity, in violation of Article 37.07,
Section 3(c) of the Texas Code of Criminal Procedure.  Tex.
Code Crim. Proc. Ann. art. 37.07, § (3)(c) (Vernon Supp. 2010).  We will examine each of Johnson’s issues in
turn.

 

 

            A.        Jury
Oath

 

            In his first
three appellate points, Johnson claims that even though the record reflects the
clerk read the oath to the jury, the jury never assented to the oath and thus
was not sworn.  This, claims Johnson, is
a violation of (1) Article 35.22 of the Texas Code of Criminal Procedure; (2)
his right to trial by jury under the United States Constitution; and (3) his
right to trial by jury under the Texas Constitution.  

            Article
35.22 of the Texas Code of Criminal Procedure provides:

 

When the jury has been selected, the following
oath shall be administered them by the court or under its direction:  “You and each of you do solemnly swear that
in the case of the State of Texas against the defendant, you will a true
verdict render according to the law and the evidence, so help you God”.

 

Tex. Code Crim. Proc.
Ann. art. 35.22 (Vernon
2006).  The Texas Rules of Appellate
Procedure create presumptions of regularity in lower court proceedings that
require us to presume, among other things, that the jury was properly impaneled
and sworn.  Tex. R. App. P. 44.2(c). 
We presume the jury was properly impaneled and sworn, unless such matter
was disputed in the trial court or the record affirmatively shows the contrary.
 See
also Osteen v. State,
642 S.W.2d 169, 171 (Tex. Crim. App. 1982); Faison v. State, 59 S.W.3d 230, 237 (Tex. App.—Tyler
2001, pet. ref’d).   Here, there was no
objection to a failure to administer the oath to the jury panel.  Johnson maintains the record affirmatively
demonstrates the jury was not properly sworn because it fails to reflect that
the jury responded in the affirmative to the oath, citing the following
excerpts from the record:

THE
CLERK:             You and each of you do
solemnly swear that in the case of the State of Texas versus Ryan Johnson you
will a true verdict render according to the law and the evidence, so help you
God?

 

THE
COURT:             Please be
re-seated.  Ladies and gentlemen, you’ve
been given a juror badge . . . .

 

Johnson contends that because an “oath” is commonly defined[3]
as “a solemn usu. formal calling upon God or a god to witness to the truth of
what one says or to witness that one sincerely intends to do what one says,”[4]
the oath requires an affirmation or response on behalf of the jurors.  

            The State
contends that the issue of whether the oath was administered has been mooted by
the filing of a supplemental reporter’s record[5]
which reflects that the clerk read the oath to the jury and that the jury was
sworn as required by Article 35.22 of the Texas Code of Criminal
Procedure.  Given the affirmative showing
in the supplemental reporter’s record that the jury in Johnson’s case was, in
fact, sworn, Johnson’s first three points of error are overruled as moot.  See
Wilson v. State, 296 S.W.3d 140, 143 (Tex. App.—Houston [14th Dist.] 2009,
pet. ref’d).  Even if the issue of
whether the jury was sworn in accordance with Article 35.22 was not rendered
moot in this instance, there is no affirmative showing in the record that the
jury oath was not properly administered. 
Therefore, it must be presumed the jury was properly impaneled and
sworn.  See Tex. R. App. P.
44.2(c). 

            B.        Jury
Unanimity

 

            In points of
error four through six, Johnson maintains the punishment charge presents
fundamental error by not requiring jury unanimity in finding no sudden passion in violation of (1) Article
37.07, Section 3(c) of the Texas Code of Criminal Procedure;[6]
(2) the Texas Constitution; and (3) the United States Constitution.  If the jury had found Johnson acted under the
immediate influence of sudden passion[7]
arising from adequate cause[8]
when he killed Robinson, the crime would have been punished as a second-degree
felony rather than a first-degree felony. 
Tex. Penal Code Ann. §
19.02 (Vernon 2003); Trevino v. State, 100 S.W.3d 232, 237 (Tex. Crim. App. 2003); Bradshaw v. State, 244 S.W.3d 490, 494
(Tex. App.—Texarkana 2007, pet. ref’d).  

            A claim of
jury charge error is reviewed under the two-pronged test set forth in Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1984) (op. on reh’g), overruled
on other grounds by Rodriguez v. State, 758 S.W.2d 787, 788 (Tex. Crim.
App. 1988).   Under the first prong of
the test, we are to determine whether error exists.  Ngo v.
State, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).  If error is determined to exist, we must
determine whether sufficient harm resulted from the error to compel
reversal.  Id. at 744.  We initially
evaluate the question of error.

            When the
issue of sudden passion is raised and submitted, the jury must unanimously
agree that the defendant either did or
did not act under the immediate influence of sudden passion arising
from an adequate cause.  Sanchez v.
State, 23 S.W.3d 30, 33–34
(Tex. Crim. App. 2000); Newton v. State, 168 S.W.3d 255, 256 (Tex. App.—Austin 2005, pet. ref’d).  This requirement stems from the statutory
requirement that the jury “agree” unanimously as to both “the guilt or
innocence of the defendant and the amount of punishment.”  Sanchez, 23 S.W.3d at 33 (quoting Tex.
Code Crim. Proc. Ann. art. 37.07, § 3(c)). 

 

            The jury
charge in this case provided, in pertinent part:

 

The punishment which you may assess is
confinement in the Institutional Division of the Texas Department of Criminal
Justice for life, or for any term of not more than 99 years or less than 5 years;
unless you believe that the defendant caused the death under the immediate
influence of a sudden passion arising from an adequate cause in which event you
may assess confinement for not more than 20 years or less than 2 years.  In addition, in either case, a fine not to
exceed $10,000 may be imposed. 

            .
. . .

 

Now if you believe by a preponderance of the
evidence that the defendant caused the death of the deceased while under the
immediate influence of sudden passion arising from an adequate cause, you will
assess punishment at confinement for not more than 20 years nor less than 2
years and you may impose a fine not to exceed $10,000.

 

In the final paragraph, the charge in this case instructs the
jurors that the “verdict must be by a unanimous vote of all members of the
jury.”  This charge is virtually
identical to the charge given in Newton,
168 S.W.3d at 258.[9]  The Austin Court of Appeals found this charge
to be erroneous because the instruction did not condition the use of the
five-to-life punishment range on a unanimous finding that the appellant did not act under the influence of sudden
passion.  Id. at 257.  “Instead, the
harsher punishment range was made applicable in the absence of a finding in
appellant’s favor.”  Id.  The punishment charge in
the instant case suffers from the same defect; the jury was never instructed
that they were to impose first-degree felony punishment only if they unanimously agreed that Johnson did not act under the influence of sudden passion.  As in Newton,
this charge does not include a unanimity requirement directly relating to the
selection of the proper punishment range, and as in Newton, the charge is erroneous. 


            The
erroneous charge is not salvaged by the verdict forms, which are virtually
identical to those submitted in Bradshaw,
244 S.W.3d 490.[10]  Like Bradshaw,
the verdict forms here do not condition the punishment range on the absence of
a finding.  The verdict forms here, as in
Bradshaw, do not require the jury to
provide an explicit affirmative or an explicit negative ruling on sudden
passion.[11]  The issue of sudden passion is subsumed in
each question.  In Bradshaw, this Court observed that the verdict forms do not prevent
the charge from being erroneous because the jury is not asked to find a lack of
sudden passion, “but rather is merely instructed to assess the first-degree
felony punishment range if it does not find Bradshaw acted with sudden passion.”  Id.
at 497.  As in Bradshaw, the verdict forms in this case do not prevent the charge
from being erroneous.[12]  

            Here, the
State concedes the punishment charge was erroneous because it “theoretically
allowed the jury to make a non-unanimous decision as to sudden passion.”  Because Johnson failed to raise his
jury-unanimity objection at trial, we will reverse only if we find the charge
error caused Johnson “egregious harm.”  See Neal v. State, 256 S.W.3d 264, 278
(Tex. Crim. App. 2008).  “Jury charge
error is egregiously harmful if it affects the very basis of the case, deprives
the defendant of a valuable right, or vitally affects a defensive theory.”  Allen v. State, 253 S.W.3d 260, 264 (Tex. Crim. App.
2008).  When charge error causes a jury to
render a less-than-unanimous verdict on an issue on which unanimity is
required, the charge error is egregiously harmful.  See Ngo, 175 S.W.3d at 750–52; Swearingen v. State, 270 S.W.3d 804, 812
(Tex. App.—Austin 2008, pet. ref’d).  The
egregious harm standard requires a finding of actual, not merely theoretical,
harm to the accused.  Almanza, 686 S.W.2d at 174.  Egregious harm is a difficult standard to
meet and must be determined on a case by case basis.  Ellison
v. State, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002).  

            Johnson
contends that charge error has been found to be egregiously harmful by the Texas
Court of Criminal Appeals where there was evidence of a lack of unanimity,
citing Sanchez, 23 S.W.3d at 34.          In this case, unlike Sanchez, in which the defendant
presented evidence that the jury verdict was not unanimous, there is no evidence in this case that the jury
verdict was not unanimous.  Johnson
acknowledges that this Court has previously held that where there is no
evidence of a lack of unanimity by the jury, harm resulting from this type of
an erroneous punishment charge is not egregious.  Bradshaw,
244 S.W.3d at 498.  Johnson nevertheless urges
this Court to follow the holding of the Dallas Court of Appeals in London v. State, 325 S.W.3d 197 (Tex.
App.—Dallas 2008, pet. ref’d).  There,
the punishment charge on sudden passion provided:  “An affirmative (‘yes’) answer on the issue
submitted must be unanimous, but if the jury is not unanimous in reaching an
affirmative answer, then the issue must be answered ‘no.’”[13]
This punishment charge affirmatively directed jurors to make a negative finding
on the issue of sudden passion if they were unable to reach a unanimous
decision on that issue.  

            As in Bradshaw, here (1) there was no
affirmative direction to the jurors to make a negative finding on the issue of
sudden passion in the absence of unanimity, (2) the charge contained a general
instruction that the verdict must be unanimous, and (3) there is no evidence
that the verdict was not unanimous. 
Under these circumstances, the argument that the verdict may not have
been unanimous is theoretical only.  The degree of harm demonstrated by an
appellant must be actual, not merely theoretical.  Almanza, 686 S.W.2d at 174; Bradshaw, 244 S.W.3d at 498.   The
error was not so egregious as to vitally affect a defensive theory or make the
case for conviction or punishment clearly and significantly more persuasive.[14]


III.       CONCLUSION

 

            We affirm
the judgment of the trial court.

 

 

 

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          January
11, 2011

Date Decided:             January
26, 2011

 

Do Not Publish           

 

 

 

            

 

 

 

 

 

 

 

 

 

 











[1]All
of the witnesses agreed that Robinson was homosexual.  Johnson testified that when he met Robinson,
he thought Robinson was a female because he was dressed in female clothing and
was called “Sadera.”  After discovering
that Robinson was a gay male, Johnson stated he discontinued seeing
Robinson.  Other witnesses testified that
Robinson and Johnson were “romantically involved.” 





[2]Robinson
did not have a gun.  The item he was
holding was fingernail polish.  





[3]Article
3.01 of the Texas Code of Criminal Procedure states that words, phrases, and
terms used in the Code “are to be taken and understood in their usual
acceptation in common language, except where specially defined.”  Tex.
Code Crim. Proc. Ann. art. 3.01 (Vernon 2005).

 





[4]Merriam-Webster’s Collegiate Dictionary 854
(11th ed. 2003).

 





[5]The
supplemental reporter’s record reads:

 

THE CLERK:      You and each of you do solemnly swear that
in the case of the State of Texas versus Ryan Johnson you will a true verdict
render according to the law and the evidence, so help you God?

 

                                                (THE JURY WAS SWORN)

 

THE COURT:  Please be re-seated.  Ladies and gentleman, you’ve been given a
juror badge . . . .

 

 





[6]Article
37.07, Section 3(c) of the Texas Code of Criminal Procedure provides:

 

If the jury finds the
defendant guilty and the matter of punishment is referred to the jury, the
verdict shall not be complete until a jury verdict has been rendered on both
the guilt or innocence of the defendant and the amount of punishment.  In
the event the jury shall fail to agree on the issue of punishment, a mistrial
shall be declared only in the punishment phase of the trial, the jury shall be
discharged, and no jeopardy shall attach.  The court shall impanel another jury as soon
as practicable to determine the issue of punishment.

 

Tex. Code Crim.
Proc. Ann. art. 37.07, § 3(c).

 





[7]“Sudden Passion” means passion directly caused by and
arising out of provocation by the individual killed or another acting with the
person killed which passion arises at the time of the offense and is not solely
the result of former provocation.  Tex. Penal Code Ann. § 19.02(a)(2)
(Vernon 2003).  

 





[8]“Adequate cause” means cause
that would commonly produce a degree of anger, rage, resentment, or terror in a
person of ordinary temper, sufficient to render the mind incapable of cool
reflection.  Tex. Penal Code Ann. § 19.02(a)(1). 

 





[9]The
charge in Newton provided:

 

The punishment
which you may assess is confinement in the Institutional Division of the Texas
Dept. of Criminal Justice for life, or for any term of not more than 99 years
or less than 5 years; unless you believe that the defendant caused the death
under the immediate influence of a sudden passion arising from an adequate
cause in which event you may assess confinement for not more than 20 years or
less than 2 years.  In addition, in
either case, a fine not to exceed $10,000 may be imposed.  The burden of proof is on the defendant to
prove this issue by a preponderance of the evidence.

                . . . .

 

Now if you
believe by a preponderance of the evidence that the defendant caused the death
of the deceased while under the immediate influence of sudden passion arising
from an adequate cause, you will assess punishment at confinement for not more
than 20 years nor less than 2 years and you may impose a fine not to exceed $
10,000.

 

Id. at 256–57.

 

The final paragraph of the charge in Newton
instructed the jurors to select a foreperson “to preside at your deliberations
and to vote with you in arriving at a unanimous verdict.”  Id. at 257.

 





[10]The
verdict forms in Bradshaw provided:

 

We, the jury,
having found the defendant, Joe Bradshaw, guilty of murder, do further find
that the defendant murdered Toy Bradshaw while under the immediate influence of
sudden passion arising from an adequate cause and assess his punishment at
confinement for ________ in the correctional Institutions Division of the Texas
Department of Criminal Justice.  (Any
term of not more than 20 years or less than 2 years.)  In addition, we assess a fine in the amount of
$__________. ($0-10,000.00).

                . . . . 

We, the jury,
having found the defendant, Joe Bradshaw, guilty of murder do not find that the
defendant murdered Toy Bradshaw while under the immediate influence of sudden
passion arising from adequate cause and assess his punishment at confinement
for ________ in the correctional Institutions Division of the Texas Department
of Criminal Justice.  (Life or any term
of not more than 99 years or less than 5 years).  In addition, we assess a fine in the amount of
$__________. ($0-10,000.00).

 

Bradshaw,
244 S.W.3d at 496.

 





[11]The
verdict forms in this case provide as follows:

 

We, the jury,
having found the defendant, RYAN PATRICK JOHNSON, guilty of Murder, as charged
in the indictment, assess his punishment at confinement for ____ years in the
Institutional Division of the Texas Department of Criminal Justice.  (Any term of more than ninety-nine years or
life or less than five years.)  In
addition, we assess a fine in the amount of $________.  ($0-$10,000.00).

                . . . .

 

We, the jury,
having found the defendant, RYAN PATRICK JOHNSON, guilty of murder, do further
find the defendant cause [sic] the death of the deceased under the immediate
influence of sudden passion arising from an adequate cause.  We therefore assess his punishment at
confinement for _____ years in the Institutional Division of the Texas
Department of Criminal Justice  (Any term
of not more than 20 years or less than 2 years.)  In addition, we assess a fine in the amount
of $ _______ ($0 - $10,000.00)

 

 





[12]In
Barfield v. State, 202 S.W.3d 912,
917 (Tex. App.—Texarkana 2006, pet. ref’d), this Court held that the submission
of sudden passion as a special issue “asking only whether [the jury] found
Barfield acted under the immediate influence of sudden passion” in conjunction
with the general unanimity instruction was sufficient to guarantee a unanimous
finding.  Id. at 918.

 





[13]The
punishment charge in London was
identical to the punishment charge in Sanchez,
which charge was determined by the Texas Court of Criminal Appeals to be
erroneous.  London, 325 S.W.3d at 207.

 





[14]The
main defensive theory asserted by Johnson was self-defense.  The jury was instructed on this defensive
theory in the charge submitted to it during the guilt/innocence phase of the
trial.